**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTEN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**UNITED STATES OF AMERICA**                                         **PLAINTIFF**

         **v.**                    **Case No. 5:10-CR-50108-001**

**WILLIAM CANNON**                                                   **DEFENDANT**

### GOVERNMENT'S REPSONSE TO DEFENDANT'S POST HEARING BRIEF

Comes now, the United States of America, by and through Dustin Roberts, Assistant United States Attorney, and responds to defendant's post hearing brief, filed April 29, 2011 (Doc. 32). The government states as follows:

## PROCEDURAL POSTER

1. That defendant William Cannon ("Cannon") is charged with two counts of Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and (e), five counts of Knowingly Receiving Visual Depictions of Child Pornography in violation of 18 U.S.C. § 2552(a)(2) and (b)(1), and one count of Possession of a Computer that Contained Images of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

2. That the charges now pending from this Court stem from the defendant's arrest on July 14, 2010. On that day, Fire Marshall Captain Dave Creek (Capt. Creek), who had been conducting a routine fire inspection at EZ Credit Auto Sales, located at 2679 N. Thompson in Springdale, Arkansas, reported that he discovered a "child pornography operation".

3. That, as a result of this report by Capt. Creek regarding child pornography, officers arrived to the auto-dealership, entered the room in question, viewed the same images of child pornography displayed on the walls (although less images were actually visible at this point due to the defendant taking several down while the police were in route), and then secured the premises and obtained a state search warrant based on a violation of Arkansas Code Annotated Section 5-27-304.

4. That upon execution of the search warrant, officers found within the room, among other things, numerous images of nude or partially nude children exposing their genitalia, VHS mini videos, including some produced by the defendant depicting minors engaged in sexually explicit conduct, diaries in which the defendant describe torturing and raping children, mutilated baby dolls covered in blood, and signs saying such things as "I eat boys" and "boy killer." Outside the room, in a totally separate storage room of the business, officers eventually found an Asus computer, which the defendant asked a fellow EZ Credit employee named "Debbie" to hide from the police. In addition, and with the consent of the manager, officers searched outside the building for additional evidence that the defendant and his companions might have hidden with no results.

5. That, on March 22, 2011, the defendant filed a motion to suppress (Doc 24).

6. That, on March 30, 2011, the government filed its timely response (Doc 26).

7. That on April 8, 2011, a daylong hearing was conducted before the Honorable Magistrate Judge Erin Setser, in which Springdale Detective Al Barrios, Springdale Detective Darrell Hignite, and Fire Marshal Capt. Dave Creek all

testified. During the hearing, the defendant, represented by Federal Defender James Pierce, as well as the Court, questioned the witnesses about the initial entry into the room in question.

8. That, at the conclusion of the hearing, the Court ordered the parties to submit additional briefs with regards to the issues raised during the hearing. In addition, the court permitted the government additional time to respond to the "supplemental motion to suppress" filed by the defendant the afternoon before the suppression hearing (Doc 27).

## DISCUSSION

The issues presented in the Government's brief herein are as follows: 1) the defendant did not reside in the room in question, and therefore had no, or at most a lower expectation of privacy, which in either case was not reasonable, 2) the officers entry into the room was not a "search" under the 4th Amendment because it went no further in scope than Capt. Creek's search, 3) that if the Court should find that the defendant's Fourth Amendment rights were violated, there was still probable cause to issue the warrant minus the "tainted" evidence, and 4) with regard to the defendant's supplemental motion to suppress (Doc 27), there was no flagrant disregard for the parameters of the search warrant and what the defendant is asking the court to do is not consistent with the law of the 8th Circuit.

I.     THE DEFENDANT DOES NOT HAVE A RESONABLE EXPECTATION OF PRIVACY IN PLACING CHILD PORNOGRAPHY ON THE WALLS OF A COMMERCIAL ESTABLISHMENT

A.     THE ROOM WAS NOT THE DEFENDANT'S HOME FOR PURPOSES OF THE 4TH AMENDMENT

During the hearing held on April 8th, the defendant's attorney questioned Detective Al Barrios as to whether the defendant gave any officer "permission to walk in and look around his *residence* within the premises". (Tr. p 48).   Clearly, this question proposed by defense counsel presumes the defendant actually resided in the room in question.   At this point, and although never previously raised by the defendant, the major focus of the hearing then became not what was formally challenged in a motion to suppress, but instead revolved around the police officers' initial entry into the what was presumed to be the defendant's residence. However, now that the there has been an opportunity to look into the issue of residency, it is clear based on the testimony produced before the Court, and facts now known to law enforcement, that the defendant did not reside in the room in question. Instead, the defendant simply had access to and utilized the rooms in performing his employment as a security guard. As such, the room in question should not be treated as the defendant's residence/home for purposes of a constitutional analysis.

The Fourth Amendment to the U.S. Constitution "protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" U.S. Const. Amend. IV. "With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." <u>Kyllo v United States</u> , 121 S.Ct 2038, 2042 (2001). However, Fourth Amendment rights "are personal and cannot be asserted vicariously. " <u>United States v Green</u>, 275 F 3d 694, 698 (8th Cir. 2001). In <u>Katz v United</u>

<u>States</u>, 88 S.Ct. 507 (1967), the Supreme Court established that a "search occurs for Forth Amendment purposes when the government violates a subjective expectation of privacy that society considers objectively reasonable."   Finally, the "home" has long been afforded heightened protection against government intrusion. <u>California v Carney</u>, 471 U.S. 386, 390 (S. Ct. 1985).

So the primary question in this case becomes, was the room in question actually the defendant's home/residence. In fact, this issue of residency was addressed at the suppression hearing during the cross examination of Detective Barrios (Tr p 82):

| | |
|---|---|
| Pierce: | Okay. Fair enough. Fair enough. And it's clear that the area Mr. Cannon was occupying was a residence, right? |
| Barrios: | At the time of the search warrant that was not clear. |
| Barrios: | in my direct interview with your client [Cannon], he told me that he just stayed there three nights a week and that he actually did not have a home." |
| Pierce: | Okay, Well, all right. So he lived there three nights a week, but, so, I mean… |
| Barrios: | As a security guard for the business. That's the reason why he was allowed to stay there, according to Cannon." |

So, it is clear, based on the testimony of Detective Barrios that the defendant Cannon, himself, does not claim that he lived in the room in question. In fact, the defendant's assertion of non-residency is in direct opposition to what was alleged and maintained by defense counsel during the April 8th hearing.

In addition, and based on this issue being raised for the first time during the hearing on April 8th, Detective Barrios has since contacted both the owner of EZ Credit Auto, as well as, the manager of the branch location at issue.  In separate recorded phone interviews, which were immediately turned over to the defense as a part of discovery, both the owner and the manager reported to the Detective that the defendant does not pay rent there. Like the defendant, both the

owner and the branch manager of the EZ credit auto-dealership claim that his function in being in that room was that of a security guard. Further, during the hearing, Detective Barrios testified before the Court that there was no indication that he was living there; that in fact that the commercial establishment was not even zoned for residential use. (Tr. p 201).  Lastly, Capt. Creek testified that even after conducting his administrative search, and viewing the content of the room in question, he did not believe at that point it was a residence. (Tr. p 239).

In the section entitled "Review of Evidence Adduced During the Hearing" of the defendant's post hearing brief (Doc 32), the defense goes through exhaustive detail to claim that Detective Barrios and the other witnesses knew or had reason to know someone was residing in the room in question. Additional, referenced for the first time in the defense's post hearing brief, the defense now even claims that the defendant's compensation package as a night watchman included living quarters. (Doc 32 p 16). However, there has been NO testimony from anyone regarding the defendant's living situation or business agreement, other than he stayed there over night as a security guard several times a week. (Tr. p 82). In addition, the defense concludes that the defendant was the only person to have keys to access the room in question. (Def. Brief p 17). But again, there was NO testimony or evidence produced during the hearing to support this allegation. What can be concluded from the hearing, that *no employee of that particular branch* had keys to the room other than defendant Cannon.

Based on the facts and evidence produced during the hearing and the previous and subsequent investigations, the room should not be treated as the defendant's home or residence for Fourth Amendment analysis purposes. Simply stated there has been no testimony nor any evidence produced showing that the defendant did in fact "live" in the rooms in question. In fact, the Court has only heard testimony, from all witnesses, including the defendant's own statement

to law enforcement that the defendant did not reside at the Auto-dealership. Moreover, the rooms in question were simply being utilized by the defendant as a place to stay when he was performing his duties as a security guard. Therefore, the room should only be considered as part of a commercial establishment, which that the defendant had access, and not treated with the same deference as the Fourth Amendment places on a person's home.

## B.   THE DEFENDANT HAD NO EXPECTATION OF PRIVACY IN THE ROOMS OF A COMMERCIAL BUSINESS

In the current case, there has been nothing claimed by the defendant, nor proven by the defense, that would lead this Court to acknowledge that he has a subjective expectation of privacy.  Instead, and as noted above, the defense simply asserted and assumed that the defendant resided in the rooms in question because it was reported so based on "at the scene hearsay".  Because there has been nothing actually asserted by the defendant, nor proven by the defense during the hearing, the Court should deny all the defendant's pending motions due to a lack of evidence with respect to standing to claim a violation of a subjective expectation of privacy.

In order to succeed in proving the Government infringed on defendant Cannon's Fourth Amendment rights the defendant must show that he has:

> a legitimate expectation of privacy in the places or objects searched….If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally. The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area [or item] searched. We have previously noted:
> The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or the object seized. A court must determine: (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable. United States v Stallings, 28 F.3d 58 (8th Cir 994) (internal citations omitted).

In the current case, the Court has heard nothing to show the defendant had any expectation of privacy in the rooms in question. Actually, during the hearing the opposite was proven.  As noted above, the defendant, in a post Miranda interview with Detective Barrios, specifically denied living in the rooms in question. (Tr. p 82). Further, he simply claimed that he stayed there in his function as a security guard. These facts have now, as noted above, been backed up and verified by law enforcement with both the owner of the business and the manager of that location. Although, as the defense pointed out during the hearing, the defendant did have the keys to the rooms, and no one else working at the auto dealership did that day. (Tr. p 153). However, a security guard having keys to certain areas of a business does not create a expectation of privacy. Again, even the defendant (although argued to the contrary by defense counsel) does not claim this is a house or his residence. By way of example, as the Court is aware, there are numerous secure areas of the federal building that only courthouse security officers can access. However, if occasion arises, there is likely no security officer employed in the federal building who will deny a Judge access to any room in the courthouse.

Although, as the Court heard during the hearing, several officers reported that Capt. Creek informed them that the area in question was the defendant's living quarters. (Tr. p 291). This assertion concerning "Billy's living quarters" was actually specifically denied by Capt. Creek during the hearing. (Tr. p 217). So at best, the Court is left to guess if anyone actually said that the defendant was living there or was this just the term "Billy's Rooms" taken out of context by one officer and passed along to the others. Either way, there is nothing reliable before the Court to show they defendant has standing to assert that the Government violated his expectation of privacy.

Based on all the information currently before the court, including primarily the defendant's own assertions, this court is left with no basis to find that the defendant asserted that he has an expectation of privacy in the rooms in question. And, since the issue was raised for the first time during the hearing, all post hearing investigations simply show that the defendant had access to the areas in question as a function of his employment as a security guard. Provided the defendant has not asserted an expectation of privacy, either through evidence such as a rental agreement or by the facts of the investigation of this case, the Court should find that the

defendant's motion to suppress based on a violation of his Fourth Amendment rights is without merit.

### C.    DEFENDANT HAD NO REASONABLE EXPECTATION OF PRIVACY

Based on the above argument, the Court should find that the area located inside the business is not the defendant's "home" for purposes of the Fourth Amendment. However, if the Court concludes that the defendant none the less still maintained a Fourth Amendment right to privacy, the question arises to what degree, if any, does the defendant have a REASONABLE expectation of privacy in his personal belongings and child pornography (or "art" according to the defense) stored and maintained in the area in issue. It is the proposition of the Government, that given the commercial nature of the premises in question, that the defendant's expectation of privacy is not reasonable in placing child pornography on the walls of a building subject to various inspections and co-worker/owner entry.

 "Property used for commercial purposes is treated differently for Fourth Amendment purposes from residential property." United States v Carter, 119 S.Ct. 469, 474 (1998).  In fact, the Supreme Court has held that "[a]n expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home." New York v Burger, 482 U.S. 691, 700 (1987). O'Connor v Ortega, 480 U.S. 709, 717 (1987).  And, as announced in Rakas v Illinois, 439 U.S. 128. 138-144 (1978), the defendant must show both: 1) an expectation of privacy, and 2) that expectation in the place searched was reasonable. Lastly, the Supreme Court has held that "whether an employee has a reasonable expectation of privacy must be addressed on a case by case basis." O'Connor, at 718.

First of all, if the Court does find that the defendant had some expectation of privacy in this case, the reasonableness must be judge based on the setting of the premises. The reason that

an employee's Fourth Amendment rights are addressed in this manner is that each businesses' operational setup, invokes a different idea of what was reasonable in a given situation. As noted in the hearing, the defendant had actual notice that the business in which he posted child pornography on the wall was subject to inspection for fire code compliance. Capt. Creek specifically testified before the Court that "we recognized each other [defendant Cannon and Capt. Creek], I did a previous inspection of their East Robinson location probably three weeks prior…" (Tr. p 217). So, it is clear that the defendant had ACTUAL notice that the area in which he wall papered the room with child pornography was subject to inspection.

At present, and although the rooms in question were locked and maintained by the defendant, it is against common sense not to believe that there, for one reason or another, will be others accessing that area in the normal course of business. Additionally, as previously referenced, there has been no showing or assertion by the defendant that he alone had sole access to the area. As such, the Court should find that the defendant did not have a reasonable expectation of privacy when he chose to poster large images of child pornography in an area of a commercial establishment. He, like many business employees, stored personal items in the area in which he commonly accessed as a part of his employment. However, being granted access, even restricted access, to a room in a business subject to administrative searches and employee/supervisor intrusions, does not change the character of the premises from that of a commercial business into that of a home/residence. And provided that the defendant had actual notice that the rooms were subject to administrative searches, it is not reasonable to assume that child pornography posted on the walls would be maintained privately and go undiscovered by others. Consequently, the defendant's actions in this case, even if he had, at most, a lower expectation of privacy in this area, should not be seen as reasonable.

## II.   THERE WAS NO SEARCH UNDER THE FOURTH AMENDMENT BECAUSE THE OFFICERS ENTRY WAS NO MORE  INVASIVE THAN THE PRIVATE SEARCH ALREADY CONDUCTED

As evident in the pre-trial hearing already conducted, this case developed based on Fire Inspector Dave Creek's discovery of child pornography displayed on the walls of a room within the EZ Credit Auto Sales located in Springdale, Arkansas. Capt. Creek's discovery of the child pornography came as a result of his lawful fire code inspection of the commercial establishment. In conducting this inspection, Capt. Creek was allowed access to the room in question by defendant Cannon himself. Upon entering the room, Capt. Creek walked over the whole area noting fire code violations. In doing so, Capt. Creek saw numerous images of nude/partially nude boys, which he believed constituted child pornography, located in all three separate areas of the room. Upon the Captain's relying what he saw on the walls of the room to police, Detective Barrios arrived at the auto dealership to find Capt. Creek directing him toward an already open door within the business. The detective walked through the open door, entered the room, walked to the back room, viewed the same exact photos of child pornography on the wall that Capt. Creek had already seen, and backed out of the room to secure a warrant.  Because Detective Barrios' entry into the room was no more intrusive than the search already completed by the Fire Marshal, there was no Government search under the Fourth Amendment.

The Supreme Court held in United States v Jacobsen, 466 U.S. 109 (1984), that a police view subsequent to a search preformed by a private citizen does not constitute a "search" under the Fourth Amendment as long as it was defined to the same scope.  "The Constitution does not a apply to searches, reasonable or otherwise, by private individuals, so long as the private party is not acting as an agent of the Government…" United States v Miller, 152 F.3d 813 (8th Cir 1998) (quoting United States v Jacobsen, at 113).

In <u>United States v Miller</u>, the Eighth Circuit reversed a district court ruling suppressing drug related evidence based on a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. In doing so, the Court in <u>Miller</u> applied the private search doctrine to a case involving police entry following the private search of the defendant's locked living quarters by a employee of a half way house. <u>Id</u> at 816.  In applying the private search doctrine, the court found that:

> The application of *Jacobsen*'s private search rule here is as straightforward as the rule itself. There is no question that [the half way house employees] intended to act in a wholly private capacity when they entered Miller's apartment, and the police neither knew about nor acquiesced in their entry. The police first became involved the day after the joint search by [the half way house employees], and the police intrusion went no further than theirs. Thus, no Fourth Amendment search occurred at all, so the drug-related evidence in this case was lawfully obtained. <u>Id</u>. (internal citations omitted).

In fact, and even though the defendant himself expressly denies that this room was his residence, the court specifically addressed the issue of applying the private search doctrine the ones home:

> Before concluding, we take note of a recent opinion issued by the Fifth Circuit, *United States v. Paige,* 136 F.3d 1012 (5th Cir.1998). Like our case, which involves the search of an apartment, *Paige* concerns a police intrusion into residential property-specifically, a detached garage-in the wake of a private search. *Jacobsen,* by contrast, dealt with the search of a package, and "it was virtually certain that [the package] contained nothing but contraband." *Jacobsen,* 466 U.S. at 120 n. 17, 104 S.Ct. 1652. Emphasizing this point, and observing that "people's homes contain countless personal, noncontraband possessions," the Fifth Circuit declined "to extend *Jacobsen*'s holding 'to cases involving private searches of residences.' " *Paige,* 136 F.3d at 1020 n. 11. The Fifth Circuit … tailored the *Jacobsen* rule to accommodate the court's concerns when a police search follows a private party search of a home. In this situation, the Fifth Circuit held, a police search within the scope of an earlier private search is lawful only when "the private party's intrusion was reasonably foreseeable." *Paige,* 136 F.3d at 1020. We neither adopt nor reject the Fifth Circuit's rule because the police search in this case would pass muster under both *Jacobsen* and *Paige.* It was reasonably foreseeable that the on-duty supervisor of Miller's treatment facility might forget Miller was out of town, open his door when he did not respond to his morning medication call, step inside his apartment to investigate when she

detected a violation of house rules, and see the drug-related items left in open sight.   Id.

Presented before this Court is a situation involving an individual, who specifically does not claim to be living in the rooms in question.  Further, the rooms in question, are not residential in nature; they are a part of commercial auto-dealership. This particular auto-dealership, like all other commercial establishments in Springdale, is subject to fire inspections. In fact, as already referenced, the defendant specifically knew that this business, including the room in question, was subject to fire inspections based on an inspection of the other EZ Credit Auto Dealership location that occurred three weeks prior, at which the defendant was present. (Tr. p 217). Also, the defense made it very clear in the suppression hearing that occurred on April 8th, that Capt. Creek is not a part of the police (coincidentally, if he is considered a Government agent, then this would be a consent search case because the defendant opened the door and allowed the Captain access to perform his inspection and never revoked or limited his consent). (Tr. p 235). Moreover, the defense has in no way ever argued that Capt. Creek unlawfully entered the premises as a Government Agent.

In fact, in the defendant's "post hearing brief," under the section "Did Capt. Creek have the authority to give detectives consent to enter the rooms?", the defendant expressly acknowledges that Capt. Creek "was not authorized to search for evidence of a crime" and that the "Fourth and Fifth Amendment-are said not to apply" to fire inspections.  (Doc. 32 p 24). For all of these reasons, this case is exactly on point with the Eighth Circuit case of United States v Miller, 152 F.3d 813 (8th Cir 1998).   Very similar to the treatment facility in Miller, the defendant had every reason to know that the office would be subject to entry for reasons related to the type of premises; in Miller it was for treatment, in this case it was for code compliance. In both cases, it is the nature of the premises that defines the reasonableness of the entry, because in both situations each defendant is on notice that there could be entry into the rooms to carry out the purpose of the establishment.

In addition, even if the Court finds that the defendant did in-fact reside in the room in question, the same logic adopted by the Fifth Circuit in United State v Paige, 136 F. 3d 1012 (5th Cir. 1998) and noted by the Eighth Circuit in the Miller case, applies. Like Paige, the government search of the defendant's "home" followed a private search that was foreseeable.

In this case, the officers simply followed in the foot-steps of a private search, and learned no more than what was already discovered by a private, non-government agent. Therefore, this Court should find that there was no search conducted by the Government in this case under the Fourth Amendment because the scope of the intrusion was no greater than that of the private search, that the room in question was not the defendant's home, and even if it was the defendant's home, the private search of the room was foreseeable by the defendant due to his prior dealings with fire inspections.

## III. WARRANT SUPPORTED BY PROBABLE CAUSE

Even if the Court finds that the defendant had an expectation of privacy in the room in question and that the police violated this privacy interest, the warrant is still supported by probable cause and therefore, suppression of the evidence is not mandated. In the current case, the officers, based on the initial report, and under the belief that the premises in question were in fact simply a part of the open business establishment, entered the room in question and observed, among other things, at least one poster of child pornography hung on the walls. Upon observing the child pornography, the officers immediately exited and secured the room in order to obtain a warrant. (Tr. p 21) Included in the warrant affidavit itself was both a description provided by Capt. Creek, as well as, what was observed by the officers. (Supp Hr Govt. exhibit 3). Taken independently, and as relayed in the warrant application, the description of what Capt. Creek observed during his lawful fire inspection of the business constitutes probable cause. As such, there is no basis for the exclusionary rule to be applied in the case at bar.

Under the exclusionary rule, both "primary evidence obtained as a direct result of an illegal search or seizure," as well as, "evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree. United States v Swope, 542 F3d 609 (8th Cir. 2008) (quoting Segura v United States, 468 U.S. 796, 804 (S. Ct. 1984)). "However, the exclusionary

rule is inapplicable when the connection between the constitutional violation and the evidence to be excluded is so attenuated as to dissipate the taint…the question …is whether, under the independent source doctrine…[is] the warrant an independent source for the physical evidence. Id. at 613. (internal citations omitted). The Supreme Court has held that for the independent source doctrine to apply, the following two questions must both be answered affirmatively: was "the agents' decision to seek the warrant prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." Murray v U.S., 487 U.S. 533 (1998). In applying this test for the independent source doctrine, the 8th circuit, along with all other circuits, has held that the second prong of this test is satisfied if "the application affidavits support probable cause after the tainted information has been redacted from them. United States v Swope, 542 F3d 609, 614 (8th Cir 2008).

In applying the above, it is clear that the officer's were going to seek a warrant even if they never entered the room. First of all, the officers were called out on an alleged "child pornography operation." Second, and upon arriving at the scene, Capt. Creek told Det. Barrios that he saw "several images in the main room that depicted nude children with genitalia visible who appeared to be under the age of 13." (Tr. p 288).  In addition, Capt. Creek described "kill boy" type handmade signs and mutilated baby dolls, some of which could be corroborated based on viewing the room from the hall.  Finally, the officers had information that the defendant was attempting to conceal evidence before their arrival. As such, the officers had a reliable source, with detailed information of a crime, corroborated by both physical evidence and acts of the defendant. Therefore, regardless of the entry into the room, officers would have sought a warrant in this case.

With respect to removing the "tainted" section of the warrant, Capt. Creek's observations memorialized in the warrant sufficiently describe child pornography under Arkansas Law to establish probable cause. As noted in the Government's response to the defendant initial motion to suppress, Arkansas Code Annotated, Section 5-27-304, makes it a felony offense to be in possession of a matter depicting sexually explicit conduct involving a child. Arkansas Code Annotated, Section, 5-27-401(4)(F), defines sexually explicit conduct to include "lewd exhibition of the genitals or pubic area." Further, the Arkansas Supreme Court has defined lewd to mean a "common word with ordinary meaning …. (internal citation omitted). Blacks Law dictionary defense "lewd" as "obscene or indecent; tending toward moral impurity or wantonness." George v State, 358 Ark. 269, 280 (2004). In fact, in George, the Arkansas Supreme Court in interpreting the Arkansas definition of sexually explicit conduct held that photographs possessed by the defendant showing bare breasts of 14 year old girls, constituted a "lewd exhibition" and therefore constituted images of sexually explicit conduct. Id at 28.

At present the affidavit to which the magistrate found probable cause included the following:

On Wednesday, July 14 2010 at approximately 1030hrs Detective D. Hignite and Detective A Barrios responded to ….a report of child pornography being located inside of a commercial business in Springdale.

On Det. Hignite and Det. Barrios' arrival they made contact with Sgt. E. Motsinger. The detectives were advised that they were called to assist the Springdale Fire Department because the Fire Marshal located a room that contained child pornography and camera equipment. Sgt. Motsinger stated that

patrol had secured the scene, located a suspect, and called for the Criminal Investigations Division.

The detectives then made contact with the Fire Marshal Dave Creek inside the business. The detectives were advised that he was on the premises …doing routine fire inspections.

Mr. Creek stated that at that point he could hear things being moved around in the room. Mr Creek was then allowing into the room. Mr Creek stated that he witnessed pictures of small boys on the walls of the living area and also the kitchen area of this room. He said that the boys were in various forms of undress. He said that some of the pictures were of small boys nude stuck to the wall. He said that there were several handmade signs saying "I kill boys" and nude baby dolls being suspended upside down in bondage positions. He said that he also saw video and tripod equipment in the room.

Detectives then looked in the room….

Just based on the above, the Judge who reviewed the warrant could tell, that 1) there was a reliable source reporting the information (Capt. Creek), 2) that his report was that he discovered child pornography, 3) the detectives elicited details of the child pornography that he discovered, including multiple picture of small nude boys, and 4) the images of the nude boys were in a sexual setting with nude baby dolls in bondage positions, along with sadistic handmade signs. Based on the several factors listed above, there is more than enough to establish probable cause that evidence of a violation of Arkansas' child pornography statute was present in that room, thereby justifying a search warrant in this case.

Based on all the above, this Court should find that the warrant provided an independent source, separate and apart from any and all possible Fourth Amendment violations. Consequently, because there was a valid search warrant, and that the warrant justified the officers entering the room and collecting evidence, the exclusionary rule does not apply in the current case.

## IV. THERE WAS NO FLAGARANT DISREGARD FOR THE PARAMETERS OF THE SEARCH WARRANT

On the afternoon before the scheduled suppression hearing in this case, the defendant caused to be filed a "supplement motion to suppress and brief in support." (Doc. 27).  In this additional motion to suppress, the defendant urged the court to suppress all evidence seized due to a "flagrant" disregard by the officers with respect to the limitations of a search warrant. Specifically, the defense argues that that there was unrelated evidence seized pursuant to the search warrant in this case, which mandates that all evidence be suppressed. However, and as noted by the defense in its own brief, the Eighth Circuit does not support this use of the exclusionary rule. As such, the Court should find there was no disregard, flagrant or otherwise, with respect to the purpose and scope of the search warrant that would justify the suppression of evidence in this case.

The Eighth Circuit took up the flagrant disregard issue raised by the defense in the current case in United States v Decker, 956 F2d 773 (8th Cir. 1992), in holding:

> "The Supreme Court…has expressly dictated that the flagrant disregard standard applies only where the government exceeds the scope of the authorized search in terms of places searched, and not cases in which the government indulges in excessive seizures….as long as the unlawfully seized items are suppressed there in no requirement that lawfully seized evidence be suppressed as well" Id. (citing Waller v Georgia, 467 U.S. 19 (1984)).

During the April 8th hearing, Detective Al Barrios testified that they only searched the area authorized by the search warrant. (Tr. p 148). In addition, because the defendant was seen by several witnesses trying to dispose of and conceal evidence before the police arrived, the Detective got consent to search from the manager and the individual employees for all the area outside of the scope of the search warrant. (Tr. p 148) However, nothing of evidentiary value was obtained outside the area authorized by the search warrant. In addition, Detective Barrios was extensively questioned during the hearing about the significance and relevance of each and every item seized as evidence. (Tr. pp 101-132) And as evidence by his response, all of the items were related to the purpose of the search warrant and were justified in seizing as evidence under the items to be seized section of the search warrant.

On this same topic, the defense specifically challenged the legitimacy of the seizure of the Asus laptop computer. However as noted by the detective in the hearing (Tr. pp 102-111), computers are specifically accounted for by the parameters of the items to be seized section of the search warrant in that they are capable of containing digital evidence of child pornography, such as audio and binary files.

Because the items seized in this case were all done so within the geographic parameters defined in the search warrant, there was no flagrant disregard to the limitations of the warrant that would justify suppression of evidence. In addition, the Asus laptop computer, along with all other evidence capable of containing or storing digital media was specifically contemplated and authorized by the Judge to be seized as evidence in this case. As such, the computer, nor any other item of evidence, taken into custody pursuant to the search warrant should be suppressed due to excessive seizures.

## **CONCLUSION**

In the current case, there simply have been no Fourth Amendment violations. First of all, the defendant specifically asserted that he does not reside in the rooms in question. This information has now been supported by both the owner and the manager of the auto-dealership. And at no point, either during the police investigation or the subsequent hearing, has the defendant demonstrated to the Court anything other than that the room in question was used by him in performing his duties as a security guard. In fact, provided the area was subject to administrative searches and possible entry by other employees/owners of the business, there has been no showing from the defendant that he even had an expectation of privacy at all.

Secondly, even if the Court finds that the defendant had an expectation of privacy in the area, it is still not his residence, but yet a part a commercial establishment.  In placing large poster size images of child pornography on the walls of a room located in a commercial establishment, even a room that the defendant locks, it is not reasonable to expect that those images would go un-viewed/undiscovered. The most telling piece of evidence of this unreasonableness is the fact that Capt. Creek, just three weeks prior to this inspection, preformed a similar one at the other EZ Credit Auto Dealership location in Springdale (the company the defendant worked for operated two auto dealerships, and the defendant worked in both locations). During this inspection, the defendant actually came into contact with Capt. Creek when he was performing the fire inspection of the other auto-dealership location. This contact is ACTUAL notice that the area was subject to administrative searches. Therefore, it is not a reasonable expectation for the defendant to place large poster size images of child pornography, along beside numerous items and signs reflecting a sadistic and masochistic context, in a room of

a commercial establishment that he KNOWS is subject to administrative searches, and expect these images to go undiscovered and remain private.

Thirdly, the officers, upon arriving at the business, entered the open room in question believing that the area was simply a part of the business accessible to the public. In doing so, the officers entered the room, viewed the child pornography displayed on the back wall without moving any items or even opening any doors. Upon seeing the images of the nude minors, the officers immediately backed out and sought a warrant. In entering the room, the officers went no further, and discovered no more, than what was already discovered and viewed by Capt. Creek during his fire inspection. And as noted and argued by the defence in its post hearing brief, Capt. Creek was not a government agent looking for evidence of a crime during this fire inspection and therefore, this inspection was a private search under Fourth Amendment. As such, the subsequent police follow up entry into this room is not a search under the Fourth Amendment pursuant to the private search doctrine.  And, even if, contrary to what the defendant claims, the room at issue is considered the defendant's residence, this private search/inspection was foreseeable by the defendant given he had actual notice.

Fourthly, in the affidavit section of the warrant application itself, the authorising Judge who signed the warrant, had both a detailed description provided by Capt. Creek of what he saw, as well as, a supporting description of the same image provided by the officers. Even if the Court finds that the officer's entry into the room was in violation of the Fourth Amendment, the warrant itself still establishes probable cause in removing the "tainted" portions. Capt. Creek's description of young nude boys amongst sadistic signs and baby dolls in various forms of bondage, establishes probable cause under the Arkansas definition of "lewd exhibition of the genitals" as defined in Arkansas Code Annotated, Section 5-27-401(4)(F).

Finally, with respect to the defendant's supplemental motion to suppress (Doc. 27), there has been no showing that the detectives seized any items of evidence outside the geographic parameters authorised in the search warrant. In addition, every item seized as evidence was authorized under the search warrant. With respect to the Asus laptop which was found to contain child pornography, this item was specifically contemplated in the search warrant section of "items to be seized."  As the Court is aware, a computer is capable of containing images of child pornography in various digital formats.

In summary, based on all the above case law, facts, and arguments, the defendant's motion to suppress, supplemental motion to suppress, and post hearing motion to suppress, should all be denied.


Respectfully submitted,

Conner Eldridge,
UNITED STATES ATTORNEY

By:    s / Dustin S Roberts
_____
Dustin Roberts
Assistant U. S. Attorney
Arkansas Bar No. 2005185
414 Parker Avenue
Fort Smith,  Arkansas  72901
Phone: (479)783-5125;  Fax: 441-0578
E-mail Dustin.Roberts@usdoj.gov

### CERTIFICATE OF SERVICE

I, Dustin Roberts, Assistant U. S. Attorney for the Western District of Arkansas, hereby certify that a true and correct copy of the foregoing pleading was electronically filed on May 9, 2011 with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

James Pierce, Attorney for the Defendant.


*s/ Dustin S Roberts*

_____

Dustin Roberts
Assistant U.S. Attorney