IN THE UNITED STATES DISTRICT COURT
FOR THE WESTEN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA )
                                                 )
        v.                               )          Case No. 5:10CR50108-001
                                                 )
WILLIAM CANNON              )

**GOVERNMENT'S REPSONSE TO DEFENDANT'S OBJECTIONS TO
MAGISTRATE'S REPORT AND RECOMMEDATION**

     Comes now, the United States of America, by and through Dustin Roberts, Assistant United States Attorney, and responds to defendant's objections (Doc. 40) to the Magistrate Judge's findings regarding the defendant's motion to suppress. The government states as follows:

## PROCEDURAL HISTORY

1. That defendant William Cannon ("Cannon") is charged with two counts of Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and (e), five counts of Knowingly Receiving Visual Depictions of Child Pornography in violation of 18 U.S.C. § 2552(a)(2) and (b)(1), and one count of Possession of a Computer that Contained Images of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

2. That the charges now pending from this Court stem from the Cannon's arrest on July 14, 2010. On that day, Fire Marshall Captain Dave Creek (Capt. Creek), who had been conducting a routine fire inspection at EZ Credit Auto Sales, located at 2679 N. Thompson in Springdale, Arkansas, reported that he discovered a "child pornography operation".

3. That, in responding to Capt. Creek's call, Officer Eric Holland arrived on the scene and spoke with Capt. Creek in-front of Cannon. Capt. Creek reported that "the walls of the rooms

in question were adorned with pictures of half nude boys and things of that nature." (Supp. Tr. P. 25). After being informed of the suspected child pornography on the walls of the room in question, Officer Holland turned to Cannon (who was present for the whole conversation between Capt. Creek and Officer Holland) and obtained consent to enter the rooms. Upon entering the rooms, Officer Holland viewed numerous images of children covering the walls (although less images were actually visible at this point due to the defendant taking several down while the police were in route), and then exited the premises for the purposes of seeking a warrant. Within a few minutes, Detective Al Barrios arrived on the scene, entered the rooms in question, viewed the images on the walls, and then secured the premises to obtain a state search warrant based on a violation of Arkansas Code Annotated Section 5-27-304. Before leaving the premises, Det. Barrios got a detailed description from Capt. Creek of what he viewed in that room and then subsequently included this description in the affidavit for the search warrant.

4. That upon execution of the search warrant, officers found within the room, among other things, numerous images of nude or partially nude children exposing their genitalia, VHS mini videos, including some produced by Cannon depicting minors engaged in sexually explicit conduct, diaries in which Cannon describe torturing and raping children, mutilated baby dolls covered in blood, and signs saying such things as "I eat boys" and "boy killer". Outside the room, in a totally separate storage room of the business, officers eventually found an Asus computer, which Cannon asked a fellow EZ Credit employee named "Debbie" to hide from the police. A subsequent forensic examination of the Asus computer revealed approximately 1400 images of suspected child pornography.

5. That, on March 22, 2011, Cannon caused to be filed a Motion to Suppress. (Doc 24).

6. That, on March 30, 2011, the Government caused to be filed its timely Response. (Doc 26).

7. That on April 8, 2011, a daylong suppression hearing was conducted before the Honorable Magistrate Judge Erin Setser, in which Springdale Detective Al Barrios, Springdale Detective Darrell Hignite, and Fire Marshal Capt. Dave Creek all testified. During the hearing, Cannon, represented by Federal Defender James Pierce, as well as the Court, questioned the witnesses about the initial entry into the room in question.

8. That, at the conclusion of the hearing, the Court ordered the parties to submit additional briefs with regards to the legality of Det. Barrios' entry into the room at issue.

9. That on April 29, 2011, Cannon caused to be filed his Post Hearing Brief. (Doc. 32).

10. That on May 9, 2011, the Government caused to be filed its Response to defendant's post hearing brief (Doc. 33).

11. That on May 17, 2011, the Court heard additional testimony with regard to Cannon granting officers consent to search the room in question. Specifically, the Court took testimony from Springdale Officer Eric Holland, who was the first responding officer on scene. Officer Holland testified that he was granted consent to search the room in question by Cannon, but did not convey this consent to Det. Barrios when he arrived on the scene. At the conclusion of the hearing, the Court allowed the parties to submit briefs on the issue of whether a consent to search granted by Cannon to one officer, is valid for other officers who subsequently enter the premises.

12. That on May 18, 2011, both the Government (Doc. 36) and Cannon (Doc. 37) submitted supplemental post hearing briefs.

13. That on May 19, 2011, Magistrate Judge Erin Setser caused a report to be filed recommending Cannon's Motion to Suppress be denied. (Doc. 38).

14. That on June 6, 2011, Cannon filed his objections to the Magistrate Judge's recommendation. (Doc. 40).

## **DISCUSSION**

The issues presented in the Government's response to Cannon's objections to the Magistrate Judge's findings are as follows: 1) the Magistrate Judge, being in the best position to gauge a witness' credibility, correctly applied the independent source doctrine and 2) the Magistrate Judge, after hearing from all the witnesses and being extensively briefed on the facts of the case, correctly concluded that Det. Barrios' entry into the rooms in question was done under a good faith belief he was not violating the defendants fourth amendment rights.

### **I. APPLICATION OF THE INDEPENDANT SOURCE DOCTRINE**

Cannon's first objection to the Magistrate Judge's report and recommendation revolves around the application of the independent source doctrine. However, rather than attacking the application of this doctrine in general, this objection specifically is directed toward attacking the Magistrate Judge's assessment of the credibility of Det. Barrios. In fact, Cannon's main assertion with respect to this objection is that because Det. Barrios misrepresented Capt. Creek's description of the images in the search warrant affidavit, and then subsequently gave false testimony during the suppression hearing in the case, the court should not have considered his account of Capt. Creeks' description of the images set forth in the affidavit for purposes of finding probable cause. However, given the Magistrate Judge heard from both Capt. Creek and Det. Barrios and took into account all the arguments concerning witness credibility in making its decision, this Court should find that the Magistrate correctly applied the independent source doctrine in this case.

Although, the defense in the present case is attacking the Magistrate Judge's assessment of witness credibility, it is clearly established law in the 8th Circuit that "[a] trial court is in the best position to evaluate the credibility of witnesses, and its findings on credibility are virtually unreviewable on appeal." United States v Sinclair, 474 F.3d 1148, 1149 (8th Cir. 2007) (quoting United States v Heath, 58 F.3d 1271, 1275 (8th Cir. 1995)). The reason why this is a long standing rule, is that the Judge in any proceeding has the best ability to gauge a witnesses' veracity while on the stand, and subsequently vet that witness' testimony against the overall facts of the case. In this case, the Court was aware that Det. Barrios had been a police officer for 17 years, 12 of which assigned to the criminal investigations division as a detective. (Tr. P. 7). Furthermore, the Magistrate Judge was aware that within the criminal investigation division, Det. Barrios was the agency's sole computer forensic examiner and coordinator of the crimes against children task force. (Tr. P. 7). Moreover, the Magistrate Court was aware that Det. Barrios had worked nearly all of the child pornography cases originating out of Springdale in the recent past, and has been the lead detective on numerous child pornography cases resulting in both State and Federal prosecutions. (Tr. P.7).

During the hearing, Det. Barrios stated that he got a detailed description from Capt. Creek of the following information, which he then included in the search warrant affidavit:

> Mr. Creek stated that he witnessed pictures of small boys on the walls of the living area and also the kitchen area of his room. He said that the boys were in various forms of undress. He said that some of the pictures were of small boys nude stuck to the wall. He said that there were several handmade signs saying "I kill boys" and nude baby dolls being suspended upside down in bondage positions. (Govt. Exhibit 3).

However, as pointed out by the defense, during the suppression hearing Capt. Creek could not remember telling Det. Barrios that there were NUDE images of boys in the room (incidentally, Capt. Creek only testified that he couldn't recall describing the nude image to Det. Barrios, not

5

that he didn't do so) (Tr. PP. 265-266). Based on this lack of memory, the defense simply asserts that Capt. Creek never described nude images and that the Detective took a certain liberty in order to secure the warrant. As evidence to support Cannon's position, the defense points out that Capt. Creek only reported half nude images to Officer Holland, and didn't detail any nudity in his handwritten statement. What the defense does not acknowledge is that during the suppression hearing Det. Barrios testified that, before seeking the search warrant, he questioned Capt. Creek specifically about the images, focusing on detailing what he meant by child pornography. (Tr. P. 22). And it was as a result of this discussion, separate and apart from any written statement or other report from Capt. Creek, which Det. Barrios subsequently included in the search warrant affidavit.

Although it is contrary to the position of the defense, the Magistrate Court gave weight to Det. Barrios' account of the description that Capt. Creek provided to him, and even weighed it against Capt. Creek's lack of memory during the hearing:

> The Court believes that Detective Barrios had a better recollection of what was conveyed to him by Captain Creek than Captain Creek did. Captain Creek's memory did not seem as clear at times. For example, while Captain Creek did not recall telling anyone that Defendant was renting the rooms in question, both Officer Holland and Detective Barrios, who separately spoke to Captain Creek, stated that Captain Creek told them that. (Magistrate Judges R & R, p 23).

In addition, there is evidence to further support Det. Barrios testimony, in that 1) the initial call, long before Officers arrived, reported a child pornography operation and 2) there were, in fact, images of nude children found throughout the room which Capt. Creek had already entered (the vast majority were pulled off the wall by Cannon after the police were called).

As such, the Magistrate Court, taking into account the training and the 17 years of experience Det. Barrios had, and applying his testimony to the facts of the case, concluded that

he accurately reported the description of the nude images provided by Capt. Creek in the affidavit for the search warrant. As a result, the portion of the search warrant affidavit comprising of Capt. Creek's description of the image, was rightfully considered by the Court and establishes probable cause in this case.[1]

## II. THE MAGISTRATE JUDGE CORRECTLY FOUND THAT THE OFFICERS ENTERED THE PREMESIS IN GOOD FAITH, AND CORECTLY APPLIED THE GOOD FAITH EXCEPTION TO THE WARRANT REQUIREMENT

The second objection asserted by Cannon to the Magistrate Judge's report and recommendation in this case deals with the Magistrate Court's conclusion that even though the search warrant affidavit is supported by probable cause based on Capt. Creek's description of the images in the room alone, the Leon Good Faith exception nevertheless justifies the Det. Barrios' warrantless entry into the room in question. Therefore, the information gathered by the officers from their entry further supports a finding of probable cause. As argued by the defense, the Leon Good Faith exception does not apply in this case, because the officers had reason to know the rooms in question were the living quarters of Cannon. However, provided that the premises was a commercial establishment, that all the witnesses who entered the rooms testified that it was not apparent that Cannon was living there, the Magistrate Judge was correct in ruling that the observations made by the officers upon entering the room could properly be considered to support probable cause in the present case.

---

[1] The defense only argues that the search warrant affidavit fails to support probable cause IF the section of Capt. Creek's description of the images provided by Det. Barrios is redacted. Therefore, if the Court agrees with the Magistrate Judge's finding that Det. Barrios was credible and that he correctly represented the information in the search warrant affidavit, then there is no additional challenge by the Defense as to the sufficiency of the probable cause.

As noted in the Magistrate Judge's report and recommendation, the 8th Circuit Court of Appeals stated in <u>United States v Conner</u>, 127 F.3d 663 (8th Cir. 1997)[2]:

> The ultimate question under *Leon* is whether the officers "had an objectively reasonable basis to believe they were complying with [applicable law] and the Fourth Amendment." (citation omitted). In the context of investigatory stops, we have stated that suppression is unwarranted where pre-warrant police conduct was "close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." (citation omitted). If, on the other hand, the officers' pre-warrant conduct is "clearly illegal," the good-faith exception does not apply. (citation omitted).

In the present case, Cannon wall papered an area of a commercial establishment with images of nude and partially nude adolescent boys, displayed signs such as "kill boys" and "boy sex", and hung nude dolls in various forms of bondage and torture throughout. During the course a fire inspection, the images on the wall, along with all the sexual paraphernalia, were viewed by Capt. Creek, who then called the police to the scene. Upon arrival at the scene, Det. Barrios testified that there were no indications that someone was residing in the rooms in question (Tr. 82):

| | |
|---|---|
| Pierce: | Okay. Fair enough. Fair enough. And it's clear that the area Mr. Cannon was occupying was a residence, right? |
| Barrios: | At the time of the search warrant that was not clear |
| Barrios: | in my direct interview with your client [cannon], he told me that he just stayed there three nights a week and that he actually did not have a home." |
| Pierce: | Okay, Well, all right. So he lived there three nights a week, but, so, I mean… |

---

[2] The Court in <u>Conner</u> held that <u>Leon</u> did not apply in that case because none of the officers believed that the defendant consented to visual or physical access of the room in question. In the current case, and although the Magistrate Judge did not rule in agreement, the Government submits that the Magistrate's position denying the defendant's motion is further supported because the defendant did grant consent for Officer Holland to enter the rooms for purposes of viewing what was on the wall (meaning the suspected child pornography) and that consent was in the collective knowledge of the responding officers, including Det. Barrios.

>Barrios:     As a security guard for the business. That's the reason why he was allowed to stay there, according to Cannon."

Further, during the hearing, Det. Barrios testified that in fact that the commercial establishment was not even zoned for residential use. (Tr. 201). Lastly, Capt. Creek testified that even after conducting his administrative search, and viewing the content of the room in question, he did not believe at that point it was a residence. (Tr. 239).

While the defense can argue reasons to the Court why the officers should have been aware there was someone possibly living in the rooms, the facts are that none of the witnesses who entered the rooms thought it could possibly be a residence until they entered the furthest section of the room, which contained both the nude image of an approximately 7 year old male and a child's bed. (Tr. P 138). In fact, as soon as Det. Barrios believed there could be a privacy interest at issue, he backed out to secure a warrant. (Tr. P 138).

As such, it was based on all the testimony, the description of the rooms itself, and the fact that the rooms were a part of a commercial establishment, that the Magistrate Court determined that it was in good faith when the officers entered the rooms in question. Therefore, the Court found, again based on the credibility of all the witnesses and the facts of the case, that the exclusionary rule does not apply to what the officers viewed during their warrantless entry into the room. As a consequence, the entire search warrant affidavit is proper to consider in determining, as the court did at present, that there was probable cause set out in the affidavit in this case.

## CONCLUSION

In summary, the Government submits that all of Cannon's arguments raised in his objections to the report and recommendation were properly considered by the Magistrate Judge.

In fact, no new case law, nor facts, have been presented by Cannon in his objections. Further, the Government maintains that the Magistrate Judge correctly applied the applicable law, with extensive briefing and argument presented by both the Government and Cannon concerning the facts of the case.  As such,  Cannon's motion to suppress, supplemental motion to suppress, and post hearing motion to suppress, was correctly decided by the Magistrate Judge in this case, and, therefore, the report and recommendation should be adopted by the District Court.

        Respectfully submitted,

        Conner Eldridge,
        UNITED STATES ATTORNEY

By:   *s/ Dustin S Roberts*

        Dustin Roberts
        Assistant U. S. Attorney
        Arkansas Bar No. 2005185
        414 Parker Avenue
        Fort Smith,  Arkansas  72901
        Phone: (479)783-5125;  Fax: 441-0578
        E-mail Dustin.Roberts@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Dustin Roberts, Assistant U. S. Attorney for the Western District of Arkansas, hereby certify that a true and correct copy of the foregoing pleading was electronically filed on June 9, 2011 with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

James Pierce, Attorney for the Defendant.

*s/ Dustin S Roberts*
_____
Dustin Roberts
Assistant U.S. Attorney