IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.  5:10 CR50108-001 |
| | ) | |
| WILLIAM CANNON | ) | |

**GOVERNMENT'S SECOND SENTENCING MEMORANDUM**

Comes now the United States of America, by and through Conner Eldridge, United States Attorney for the Western District of Arkansas, and does hereby move this honorable Court to sentence the defendant to the maximum sentence under the applicable guideline range in this case, and states:

**Preliminary Conclusion**

On July 7, 2011, the defendant, William Cannon, entered a guilty plea on Counts One and Two of Indictment, both charging the defendant with Production of Child Pornography, and Counts Three and Four, both charging Receipt of Child Pornography. Pursuant to Title 18 U.S.C. § 3553(a), this Court should sentence the defendant to the high end of the guideline range because: 1) the defendant posses an extreme danger to the community, 2) the nature of the offense at bar, including the fact that other minors were exposed to child pornography as a result of the defendant's actions, and 3) the history and characteristics of this defendant.

**Procedural History**

On July 7, 2011, the Defendant pled guilty to multiple counts of both receiving and producing child pornography. On the date of the defendant's guilty plea, the Honorable Judge Jimm

Larry Hendren ordered that a Pre-sentence investigation be completed. On December 8, 2011, Probation Officer Michael Scott completed and issued the Pre-sentence Report (hereinafter PSR) in this case. The sentencing guidelines reflected in the PSR currently calculates the total offense level to be 41 with a criminal history category of II, resulting in a range of imprisonment of 360 to life. However, the Government filed one objection, stating that the two production counts do not group into one count under the guidelines. (see PSR objections and Government Grouping Memo in support). Additionally, the defendant caused to be filed an objection to the 4 point increase reflected in paragraph 78 of the PSR relating to the depiction of sadistic and masochistic conduct. The sentencing on this matter is set for January 30, 2012.

## FACTS

On the morning of Wednesday, July 14, 2010, the Springdale Police Department was contacted by a City Fire Marshall Captain, who while during the process of conducting a routine fire inspection at EZ Credit Auto Sales, found what he believed to be child pornography displayed on the walls of a room rented by the defendant, William "Billy" Cannon [hereinafter Cannon]. Later that day, law enforcement executed a search warrant on the auto dealership, and discovered among other things, numerous images of nude or partially nude children exposing their genitalia. A total of 15 printed nude images of children were located, some hung on the wall while the majority had been pulled off the wall by Cannon after being told that law enforcement was being contacted.

Additionally, law enforcement located numerous VHS mini-cassettes, diaries in which the Cannon described torturing and raping children, mutilated dolls with blood covering them, signs saying such things as "I eat boys" and "boy killer," posters from the National Center for Missing and

Exploited Children of missing children, and at least one image on the wall of a juvenile minor, Justin Davidson, sleeping on a children's sized race car bed located in the room.

A subsequent analysis of the VHS mini-cassettes, revealed numerous recordings produced by the defendant, two of which account for the production charges reflected in Counts One and Two of the indictment. Specifically, Count One of the Indictment, as described in the plea agreement (Doc 46), is an approximately 19 minute video depicting the victim exposing herself to the camera, and engaging in sexually explicit conduct, including simulated sex acts with a dildo and having sexual contact with an adult female. During the production of this video, the defendant can be heard and identified as the person running the camera. Present inside the room while the defendant produces the video are two juvenile males, who both sit within feet of the victim engaging in sexually conduct.

During a subsequent interview of one of the juveniles males, namely Justin Davidson, he confirmed that he was approximately 14 years of age when the video was made, and at the time he was a runaway from Youthbridge (an inpatient juvenile treatment facility in Benton County). Additionally, Davidson disclosed that Cannon provided him with drugs, alcohol, and a place to stay since he was 13 years of age and that Cannon introduced him to "cutting," which refers to the masochistic cutting of oneself with sharp instruments for pleasure. He also confirmed that he had been in the room in which the defendant stayed at the time of his arrest and had witnessed the contents, including the boy themed "art."

Count Two of the Indictment is an approximate 1 minute video produced by the defendant of the same minor victim lying completely nude on a bed with the focal point of the video being that

of the minors vagina and buttocks. During the production of this video, Cannon is again heard and identified as the person controlling the camera. He starts out focusing the camera on the vaginal area of the minor. He then tells her to "roll the f*ck over" onto her stomach so that he could video the cut he had placed on her buttocks. During a subsequent interview with the victim, she told law enforcement that she had meet the defendant when she was 15 years of age. She explained that Cannon introduced her to "cutting" and that he once cut her so bad on her leg that it produced a scar. During the interview, law enforcement noted a large scar on the victim that ran the length of her thigh. As documented on the VHS cassette that contained the two counts of production, there is a section of the video in which the defendant is surrounded by the three juveniles and uses a razor blade to cut himself on his chest. He then subsequently uses the blood from the wound to make an inverted cross on his chest. After doing so, the juveniles each take turns cutting themselves on camera. After one of the juveniles cuts himself on his wrist, he then makes an inverted cross on his forehead.  Lastly, the victim told law enforcement that she was aware of the defendant's attraction to young children because he had told her about it more than once, and had even shown her pictures of nude children.

Also located during the search of the Cannon's residence were 10 journals/notebooks dating from October 2004 until July 2009. Inside these journals, Cannon wrote extensively about his attraction to young boys and his desire to kidnap them so that he could rape, cut, and kill them. Additionally, he wrote about exposing himself to young boys at the Jones Center, taking underwear belonging to young boys from the center, and reference speaking with the victim about his attraction to little boys.

4

## DANGER TO THE COMMUNITY

A primary concern of criminal justice system is protecting the public from future crimes committed by the defendant. In this case, as in all production of child pornography cases, the need to protect the public, particularly minors, is the most important of the sentencing factors set forth in 18 USC 3353(a). As evidenced by all of Cannon's writings, as well as what was corroborated by the by the investigation, he poses an extreme danger to all children in the community in this case.

As referenced in paragraph 51 of the PSR, Cannon kept journals that were recovered by law enforcement. These writings, which began in October 2004 and continued until July 2009, documented in great detail his desires to rape and torture children. Beginning with his earliest writings recovered by law enforcement, Cannon documented how he once masturbated while watching a six (6) year old boy ride his bike outside his apartment. He later details the date he meet Justin Davidson, who was 14 years of age at the time, and expresses his desire to have sex with him. During this period, the defendant repeatedly discusses his desires for minors, in writing things such as "Im a little boy raper, +killer." Specific as to Justin Davidson, the defendant writes "I have to cut him, mark him for life" and "I will Kill Justin, I will rape Justin." The defendant over the preceding months, writes extensively about grooming Justin Davidson to molest little boys, so that he would become "just like me." Additionally, he references numerous times exposing Justin Davidson to pictures of nude boys.

Beginning in 2005, the Cannon writes about going to the Jones Center, which is a community center located in Springdale, Arkansas, in order to expose himself to, and see children. In fact, in one journal entry Cannon writes. "[s]hower at the Jones Center. I found a little boys undies size 6 with blood on them." and "shower at the Jones Center today...I cut there again today in the bathroom

5

stall." During a entry in 2007, the defendant writes at length about exposing himself to boys in the shower at the Jones Center saying such things as:

> Jones Center Sunday 1hr in the shower +locker  room i don't leave until a little boy sees me nakie (happy face) --my big dick. I go into the bathroom stall with KY. Play with my Dick get it half hard and wait till I see or Hear Boys then walk around Nakie with my Dick all wavein around they'll look + stair....they will see me maybe even come in the shower + get nakie 2 (happy face) I just love little Boy's so much seein them nakie or being in front of them nakie, in front of them nakie with my dick half hard...thats my thing I live 4it, Im a little Boy lover.

Throughout the remaining journal entries, extending from 2007 until 2009, Cannon continues to repeatedly and obsessively write about his visits to the Jones Center for the purpose exposing himself to little boys and to see them naked. Intertwined in most all of these entries, the defendant expresses his desires to sexually abuse and harm young children, in writing things such as "all I can think about is rapein+killin a 9,10, or 11 year old....I will rape a little boy with my knief (sp) first the handle then the blade, he'll cry." During one of his last entries in 2009, the defendant writes "Jones Center again, Im gettin braver and more hornyer."

Throughout the defendant's journals he also documents other public places he goes to further his sexual desires for young boys. In one particular entry, the defendant writes about going to WalMart for the purpose of looking at boys. He then in great detail, elaborates about his desires to get them into his room in order to cut them and kill them. Additionally, he discusses wearing his gun incase law enforcement gets involved. At the time of Cannon's arrest, he told law enforcement that he admitted to making frequent trips to WalMart for the purpose of watching children. He also stated that he fantasied about raping and killing children.

While it is anticipated that the defense in this case will argue that these sado-masochistic/homicidal fascinations documented in the defendant's journals are just fantasy, that position is simply not supported given that the defendant acted on these writings in several ways.

First, during the interviews of Justin Davidson and the minor female victim, both admitted to law enforcement that the defendant discussed his desires to molest young boys with them. Furthermore, this defendant actually sought out, either at the Jones Center or public places such as Wal Mart, children for the purpose to advance his sexual desires. As documented by the defendant, over at least a four year period, he systamatically exposed himself to numerous children for sexual gratification at the Jones Center. Furthermore, and as reflected in the plea agreement and the PSR, the defendant admitted to having child pornography depicting acts of violence on his computer.

And perhaps the most telling of the defendant's actions, was the room in which he lived. As documented by law enforcment in this case, upon entering the Cannon's apartment a large number of plastic dolls can be seen hanging from the ceilings. The dolls were mutilated, bound and gagged in poses consistent with torture and murder. Some dolls had missing limbs, while others had their heads wrapped in cellophane plastic as to appear asphyxiated to death. In Cannon's bedroom, there were dolls hanging from the ceiling covered in blood, with scissors impaled into their faces. In addition to dolls and other sexual items, such as vibrators and dildos, the defendant had ziplock plastic bags full of children's underwear, as if he was preserving them as evidence (Cannon states in his journal that he takes young boys clothes from the Jones center). On the walls of Cannon's living quarters were homemade signs such as"BOY KILLER" and "BOY SEX" along side several poster size images of nude pre-pubecent boys.

So, clearly the defendant writings in his journals, were based in reality and not simply some fantasy. While the government admits that the actual depictions accounting for the production charges of which Cannon pled guilty are not the most heinous that has been before this Court, the danger the Cannon poses to the community, and all children therein, is beyond comparison. His documented sexually sadistic, and even homicidal, desires toward children and his actions, including

7

producing/possessing child pornography and exposing himself to minors, reflects that he is a clear threat to the community, and has been so for a number of years. As such, this Court's imposed sentence in this case should account for the danger Cannon poses to the community. Therefore, because of the need to protect children from future crimes, this Court should impose the maximum term of imprisonment as contemplated by the guidelines.

## NATURE OF THE OFFENSE

The instant offense stands out from others that have been before the Court, in that, while all child pornography inherently involves the victimization of children, not all exposes this criminal act to others, especially juveniles. As noted above, while Cannon video recorded the minor female victim engaging in sexual conduct, two juveniles males were present in the room. In fact, Cannon, being approximately forty years of age, encouraged the victim by chanting "show skin" while the juveniles, whose age were approximately fourteen and sixteen at the time, looked on. The effect this conduct that Cannon had on both the victim and the other minors will influence them for the rest of their life.

At the time of Cannon's arrest, Justin Davidson told law enforcement that Cannon had asked him to help take down the images of nude boys that wall-papered his room. In fact, when Davidson was interviewed, he told law enforcement that he has seen the "boy art" Cannon collects. Moreover, Cannon exposed this "boy art/child pornography" to the victim of the production counts. In her interview with law enforcement, the victim recounted the defendant showing her nude images of young boys and that he [Cannon] told her that he had a attraction to them. At least in part, this information was confirmed by the defendants own writings. In his journal, Cannon wrote about telling the minor female victim of his desire for young children.

8

Additionally, and as noted above, Cannon hung images of nude boys along side signs such as "boy sex" from his walls. In doing so, Cannon had to take into account that all those who entered his room would be exposed to this display. Moreover, during Cannon's post Miranda interview, he maintained that only friends were allowed in his room. So, by his own statement, he exposed others to his criminal acts. Among others exposed to Cannon's acts was the fire marshal, who was simply doing his job in conducting a fire inspection on a commercial establishment. After seeing the condition of the Cannon's room, he directly contacted the police reporting "child pornography operation."

Clearly in the case at bar, Cannon's actions exposed others to child pornography. For the minors who were in the room when Cannon recorded the sexual acts that account for the two counts of production, they in essence were victims as well. This victimization was only extended when he hung nude images of young boys on the walls in a room that was dedicated to the sadomasochistic abuse of children. As such, given this Court should apply great weight to this factor in determining the appropriate sentence for the defendant.

## HISTORY AND CHARACTER OF THIS DEFENDANT

In determining the correct sentence, the Court is to take into account the history and characteristic of the defendant. Currently before this Court is a person who has pled guilty to both producing child pornography, as well as receiving child pornography from the internet. However, the history and character of the defendant in the current case can best be gauged by the effect he had on the minors who he has placed himself into contact with since 2004.

In the current case, the victim of the productions, as well as the other juvenile witnesses, told law enforcement that he provided them with drugs and alcohol. In fact, Justin Davidson told law

enforcement that the defendant provided him with drugs and alcohol since he was 13 years of age. At the same time the defendant was providing this minor with alcohol and drugs, the defendant writes in his journals about wanting to rape him.

Contained on the same VHS mini-cassette as the two counts of production, is a recording of Cannon in a room with Justin Davidson, his juvenile step son Chance Wilks, and the female victim. As described above, the video documents Cannon cutting his ribs with a razor blade, followed by the juveniles in turn, cutting themselves. This recording, as found by law enforcement and was labeled by the defendant as "BJEC cutting" [Billy, Justin, Erika,Chance] This was just one of multiple videos discovered by law enforcement that documented the juveniles and Cannon cutting themselves. As described by the female victim of the production counts, Cannon, himself, once cut her on her thigh so badly that it left a scar still present. Moreover, Justin Davidson informed law enforcement that Cannon introduced him to cutting. He also told law enforcement that Cannon collected this blood in a containers, which he kept in the refrigerator. This fact was also documented on video by the defendant when he recorded a seperate instance in which he and Justin Davidson can be seen discussing several cutting sessions as they display to the camera around 20 bottles containing blood that Cannon kept in his refrigerator.

In this case the true danger presented by the defendant is not based on his criminal record, but rather his intentions and influence on minors. So, again, based on the § 3553(a) factors as related to the defendant's history and character, the highend of the applicable guideline range is approriate.

## Conclusion

10

In the instant case, the Cannon's sentence should be tailored to fit his individual characteristics, pursuant to 18 U.S.C. § 3553(a). Because of the extreme danger to the community Cannon poses if released, the nature of this offense, and the history of this defendant, the Court should impose the maximum term of imprisonment under the guidelines in this case.

Respectfully submitted,
Conner Eldridge
United States Attorney


By: /s/ Dustin S Roberts

Dustin Roberts
Assistant U.S. Attorney
Arkansas Bar No. 2005185
414 Parker Avenue
Fort Smith,  AR  72901
479-783-5125
E-mail Dustin.Roberts@usdoj.gov

## CERTIFICATE OF SERVICE

I, Dustin Roberts, Assistant U.S. Attorney for the Western District of Arkansas, hereby certify that on this   23rd  day of January, 2012,  I electronically filed  the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the following pleading to:


James Pierce, Attorney for Defendant


/s/ Dustin S Roberts

Dustin Roberts
Assistant U.S. Attorney
